## *In re* ADAMS, Bankrupt.

### (*District Court, D. New Jersey.* January 18, 1887.)

1. BANKRUPTCY — DISCHARGE — PARTNERSHIP—PROCEEDINGS TO ANNUL—JURISDICTION.

Three members of a copartnership, of which A. was the fourth member, were adjudged bankrupts on their own petition, as was the firm. A.'s name was signed to the petition, but without his consent, and, in composition proceedings which resulted in a resolution assented to by creditors and approved by the court, and a settlement with creditors on the basis thereof, it was expressly stated that A.'s individual assets and debts were not included in the schedules. Afterwards, in involuntary proceedings in another district, where-in A. resided, he was adjudged a bankrupt, and was granted a discharge. In proceedings under Rev. St. U. S. § 5120, to annul the discharge, the jurisdiction of the court to entertain the involuntary bankruptcy proceeding, and to grant the discharge, was denied by creditors. *Held* that, notwithstanding irregularities in the voluntary proceeding, and in the composition effected therein, these irregularities could not be availed of at this stage of the present proceeding, and afforded no ground for annulling the discharge for want of jurisdiction to grant it.

2. SAME—ACTS OF BANKRUPT BEFORE DISCHARGE.

A discharge in bankruptcy cannot be annulled under Rev. St. U. S. § 5120, where the proofs only go to such acts of the bankrupt as were shown on his examination previous to his discharge.

3. SAME—DISTRIBUTION OF ASSETS—PARTNERSHIP AND INDIVIDUAL CREDITORS.

Three of the four members of a copartnership, and the copartnership itself, settled with creditors under a composition in a bankruptcy proceeding to which the fourth member, A., was not a party. Afterwards, in another proceeding, A. was adjudged a bankrupt. *Held,* that the firm creditors were not entitled to share with A.'s individual creditors in the distribution of the fund realized from A.'s individual estate, except the holders of certain notes made by the firm, but on which A. was liable as an indorser.

In Bankruptcy.

*Eugene L. Bushe,* for North River Bank and Candler, Cobb & Co.

*G. A. Seixas* and *A. R. Dyett,* for Importers' & Traders' Nat. Bank.

*Gratz Nathan,* for Irving Nat. Bank and John E. Borne & Co.

*Wm. Forse Scott,* for bankrupt.

NIXON, J. A statement of the various proceedings heretofore had in this case will be necessary in order to intelligently consider the questions now pending. An involuntary petition in bankruptcy was filed in this court against Jay L. Adams, April 25, 1878, on which he was adjudged a bankrupt on the eleventh of June following. An application for his discharge was made on the tenth of May, 1879, notice of which was duly given to all his creditors. Eight of these, to-wit, the American Exchange National Bank, Importers' & Traders' National Bank, Mercantile National Bank, and the Irving National Bank, all of the city of New York, the Hudson County National Bank of Jersey City, the Dolphin Manufacturing Company of Paterson, Alonzo Follett, and George A. Alden & Co., appeared and filed specifications against a discharge; but none of them followed up their specifications with any evidence, and on the fifteenth of November, 1881, the discharge was duly granted. Under the provisions of section 5120 of the Revised Statutes, several of the creditors, within two years after the date of the discharge, made application to the court by petition to annul the same, as follows: The North River Bank of the city of New York, on October 31, 1883; John W. Candler, Albert A. Cobb, George C. Barrett, and Nathan A. Frye, formerly trading as Candler, Cobb & Co., on November 3, 1883; the Importers' & Traders' National Bank of New York, on November 7, 1883; John E. Borne & Co., on November 10, 1883; and the Irving National Bank, on November 14, 1883.

All the petitions alleged, generally, want of jurisdiction in the court to grant the discharge; and also specified certain fraudulent acts of the bankrupt which authorized the creditors to have the discharge vacated and set aside under the provisions of section 5110 of the Revised Statutes. The bankrupt put in a demurrer to the allegations of the want of jurisdiction in the court, and answered to the specifications of fraudulent acts. The demurrer was overruled, and a reference ordered to a commissioner to take the proofs.

Pending the reference, the assignee also filed a petition, setting forth

that the proofs of claims then filed against Jay L. Adams individually amounted to $77,570.83, and against the firm of Jay L. Adams & Co. to the further sum of $202,096.70; that the firm of Jay L. Adams & Co. was composed of John I. Adams, William H. Renaud, Edward C. Adams, and the said Jay L. Adams, and that said firm carried on business in the city of New Orleans under the name of John I. Adams & Co., and in the city of New York under the name of Jay L. Adams & Co.; that, prior to the institution of proceedings in this court, bankruptcy proceedings had been instituted in the district court of the United States for the district of Louisiana, at New Orleans, by three members of the firm of John I. Adams & Co., in the following method: John I. Adams, William H. Renaud, and Edward C. Adams filed a voluntary petition to have themselves and Jay L. Adams, and the copartnership estate of John I. Adams & Co., adjudicated bankrupts, and that one of the parties to the petition signed the name of Jay L. Adams thereto without any consent from him; that such proceedings were had under said last-stated petition that the said firm, and the individual members thereof, except said Jay L. Adams, were adjudicated bankrupts, and a composition was entered into by the said John I. Adams, Renaud, and E. C. Adams, and the estate of the firm, and of said three members thereof, was thereafter administered, and said composition was carried into effect; that, at the time of said proceedings, Jay L. Adams was a resident of the state of New Jersey, but carried on business in the city of New York in his individual name, and also in the name of Jay L. Adams & Co., under which firm name merchandise was purchased for the firm of John I. Adams & Co., in New Orleans; that there was no adjudication against Jay L. Adams individually in New Orleans, nor against him as a member of the firm of John I. Adams & Co; that the claims filed in these proceedings as indebtedness of the firm of Jay L. Adams & Co. were not proven in the proceedings in New Orleans, except such proofs of claims as are indebtedness of John I. Adams & Co., and bear their signature indorsement; that the principal place of business of the firm of John I. Adams & Co. was in New Orleans, and the only business done by Jay L. Adams & Co. in New York was the purchase of merchandise for the New Orleans house, and also the accepting of accommodation drafts drawn by the firm of John I. Adams & Co. on Jay L. Adams & Co., which drafts were negotiated by Jay L. Adams & Co. in the city of New York, and otherwise raising money in New York city for the firm of John I. Adams & Co.; that the petitioner has now on deposit, to the credit of this proceeding, the sum of about $41,000, which has been entirely derived from the individual estate of Jay L. Adams. The assignee then prays for instructions whether the said fund is to be distributed, without distinction, between the individual creditors of the bankrupt Jay L. Adams, and the creditors of Jay L. Adams & Co., or whether in such distribution the individual creditors of Jay L. Adams are entitled to be first paid.

To this petition the several creditors who had before petitioned the court to set aside the discharge and the adjudication in bankruptcy

against Jay L. Adams filed separate answers, setting up substantially these proceedings pending before the commissioner, and asking the court to take no action upon the question of the proper distribution of the assets until after the other questions were heard and determined.

Several matters are thus presented for consideration:

1. Has this court jurisdiction over the bankrutpcy proceedings begun against Jay L. Adams individually? Whatever would have been the course if such an inquiry had been instituted when the proceedings were commenced, I am clearly of the opinion that it is now too late to allow these petitioning creditors to raise the question here. I have examined the record of the bankruptcy proceedings in the case of John I. Adams & Co. in the district court of the United States for the district of Louisiana. It indicates great irregularity. The original petition for adjudication was a voluntary one, and purports to have been signed by all the members of the copartnership, to-wit, John I. Adams, William H. Renaud, Edward C. Adams, and Jay L. Adams; but the name of the last-mentioned member of the firm was not signed by himself, or, as it seems, with his knowledge and consent. It was annexed to the petition by John I. Adams, who claimed authority for so doing. The schedules at the end of the petition, marked "A," contained a statement of all the debts of the partnership, and the names and places of residence of their creditors. The Schedule B was an inventory of the estate of the firm. The remaining schedules, respectively marked "C," "D," "E," "F," "G," and "H," contained a statement of the individual debts and individual estate of the partners, John I. Adams, William H. Renaud, and Edward C. Adams. Without electing an assignee, a petition was at once filed for a meeting of creditors to consider an offer for composition, and an express statement was made therein that the individual assets and the individual debts of Jay L. Adams were not included in the schedules. The evident design of the proceeding was to secure for themselves, from their partnership and private creditors, a release, by composition, from their partnership and private debts. They were successful in this, so far as the action of the court was concerned. It approved of a resolution, signed by the requisite number of the creditors, to grant to them a release on the payment of 50 cents on the dollar for all their indebtedness, partnership and individual; they being allowed to retain the possession and exercise control of all the property. Nothing further appears to have been done, except that the court, some years afterwards, upon the application of the assignee of Jay L. Adams, appointed by this court in the bankruptcy proceedings here, dismissed all the proceedings there as to him. Whether a composition obtained under such circumstances would operate as a discharge, if the creditors of the partnership of John I. Adams & Co., and of the three individual members of the firm, should prosecute for the residue of their claims, it is unnecessary for me to determine. But the individual assets of Jay L. Adams were not in that court, nor were his individual debts in any manner paid or satisfied by the composition, and I can perceive no good reason why such irregular proceedings should be allowed to interfere, at this late day, with the ju-

risdiction of this court in the distribution of his individual assets and estate, in satisfaction of the claims of his private creditors.

2. Have the petitioning creditors made out a case to warrant the court in annulling the discharge heretofore granted to the bankrupt? Section 5120 of the Revised Statutes prescribes the manner of annulling a discharge by a creditor who takes steps to contest its validity at any time within two years after it has been granted, on the ground that it was fraudulently obtained. The application to the court shall be in writing, and shall specify which in particular, of the several acts mentioned in section 5110, it is intended to prove against the bankrupt, and shall set forth the grounds of avoidance. In his proofs the creditor is limited to the particular acts specified, and no allegation will be considered outside of the acts named in the said section. On the hearing, the court must be satisfied of two things: (1) That the fraudulent acts had been committed by the bankrupt before the date of the discharge; and (2) that the creditor had no knowledge of the same while the application for discharge was pending. After a careful consideration of the evidence to sustain the fraudulent acts alleged in the petitions, I am satisfied that the proofs in the case only go to such acts as were shown on the examination of the bankrupt previous to his discharge. All the creditors of the bankrupt are parties to the proceedings, and when an application is made for the bankrupt's discharge, and his examination takes place, the creditors must then oppose the discharge for the fraudulent acts discovered by his examination; and, if they abandon their opposition, they are afterwards estopped from attempts to annul the discharge, except upon grounds afterwards discovered, and not known or found out on the examination. I am of the opinion that the discharge ought not to be annulled upon the case presented.

3. What creditors are permitted to participate in the distribution of the assets? This is an individual proceeding against Jay L. Adams, and his individual creditors have the first lien upon the fund. The partnership creditors agreed to the composition, and have partaken of the fruits. However irregular those proceedings, they will not be allowed in these proceedings for the distribution of the private estate of the bankrupt, as against his individual creditors, to impeach their validity. It appears, however, that, as to several creditors, the same debt is due from the partnership and from Jay L. Adams individually. Several of them were proved on notes of the partnership for which Jay L. Adams is liable as an indorser. In such cases, the creditor has two sources to look to for the payment of his debt, and has the right to proceed against both parties until his debt is paid. These creditors are entitled, therefore, to share with the individual creditors of Jay L. Adams in the distribution of the fund in the assignee's hands.

The petitions to vacate the discharge, and annul the proceedings in this court, must be dismissed, and the assignee will proceed with the distribution of the assets according to the views above expressed.